## Ivory *versus* Burns.

1. A deed was made to the grantor's two sons-in-law (Burns being one) in fee, in consideration of love and affection and $1; below his signature was written " Sealed and delivered in presence of,"—then, " N. B.—D. Burns's half to be for the use of Mary Ann Burns after the decease of her parents," and a similar provision as to the other son-in-law; then the names of witnesses ; then receipt of grantor for $1 consideration ; then the certificate of acknowledgment. *Held,* that the *nota bene* was part of the deed and created a trust for Mary Ann.

[Ivory v. Burns.]

2. The effect of the "*nota bene*" was to control the operation of the deed by a qualification of the use.

3. A trust is not contradictory to the estate; it only establishes a new and consistent relation, but does not cut down the fee simple granted.

4. Burns survived his wife and daughter, who was their only child and had died without issue. *Held*, that the trust never took effect or was executed in possession.

5. A conveyance in trust will carry a fee without words of limitation when the intent is manifest.

6. The property was conveyed to be held by the sons-in-law in severalty by a designated division, and the estate of each was to be enjoyed by him and his wife for life, and by a *certain* daughter of each after their deaths. *Held*, that this was an intended settlement in each family, with no intention that it should revert to the grantor on any contingency or go from one family to the other.

7. In such case a chancellor would not supply words of inheritance to the trust in the daughter of one dying before her father, and thereby withdraw the fee simple granted to her father and carry it over on her death to the other family as her heirs; on her death her father was seised of an indefeasible estate in fee.

November 13th 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the District Court of *Allegheny county* : No. 138, to October and November Term 1867.

This was an action of debt, brought to April Term 1867, by Daniel Burns against Peter Ivory, in which the following case was stated for the opinion of the court in the nature of a special verdict. On the 12th day of January, A. D. 1826, John Fairley conveyed to Daniel Burns and Alexander Neely, his sons-in-law, their heirs and assigns, a tract of land containing 145 acres to be equally divided between them ; the northern half of which was to belong to the plaintiff. After the signing of the deed, and before the receipt for the consideration-money, there is the following clause : " (N. B.) D. Burns' half to be for the use of Mary Ann Burns after the decease of her parents, and A. Neely's half to be for the use of Elizabeth Neely after the decease of her parents." This memorandum is not signed by John Fairley, but it has the names of James M. Riddle and Thomas Enoch signed to .it. After this memorandum follows the receipt of $1, being the consideration-money mentioned in the deed. To this receipt is the signature of John Fairley, attested by James M. Riddle. Then follows the acknowledgment in the usual form taken before Thomas Enoch, an alderman. It is further agreed that John Fairley died leaving three children, to wit: Elizabeth Burns, wife of Daniel Burns, the plaintiff, who had one child, to wit, Mary Ann Burns. That Elizabeth and Mary Ann Burns are both dead, leaving no issue. That Sarah Neely, the second daughter of John Fairley and wife of Alexander Neely, is dead, leaving six children living and two dead, leaving issue. Eliza-

[Ivory *v.* Burns.]

beth Neely, daughter of Sarah Neely, is dead, leaving surviving her three children. John Fairley, Jr., the third child of said John Fairley, deceased, is dead leaving three children. That upon the 15th day of November, A. D. 1866, the plaintiff, Daniel Burns, for the consideration of $14,294, conveyed to the defendant the northern half of the tract aforesaid, in fee simple, clear of all encumbrances.

The conveyance contained the following covenant, in addition to the covenant of general warranty: "The said Daniel Burns covenants and agrees to and with the said Peter Ivory, that the said Daniel Burns is seised of an indefeasible estate in fee simple, in the tract or piece of land hereby conveyed by him to said Ivory; and that he, the said Burns, has a good right to sell and convey the same."

Suit has been brought to recover the amount of a bond given for part of the purchase-money of said tract, dated the 15th of December 1866. Real debt, $3572.12, payable on February 1st 1867, with interest from said date.

. If the court should be of the opinion that the deed of John Fairley vested in Daniel Burns an indefeasible title in fee simple to the tract of land therein conveyed to him (which subsequently became vested in the defendant), notwithstanding the clause referred to, then judgment to be entered for the plaintiff for the sum of $3572.12, with interest from February 1st 1867. But if not of that opinion, then judgment to be entered for the defendant.

The deed from Fairley to Burns and Neely was "in consideration of *the* natural love and affection and of the sum of one dollar."

The conclusion of the deed with the " N. B.," &c., was as follows:—

" In witness whereof, the said John Fairley hath hereunto set his hand and seal the day and year first above written.

his<br>
JOHN × FAIRLEY.<br>
mark.

Sealed and delivered in the presence of

N. B.    D. Burns' half to be for the use of Mary Ann Burns, after the decease of her parents; and A. Neely's half to be for the use of Elizabeth Neely, after the decease of her parents.

JAMES M. RIDDLE.
THOMAS ENOCH.

Received on the day of the date of the above indenture, of and from the above-named Alexander Neely and Daniel Burns, the

[Ivory v. Burns.]

sum of one dollar, lawful money of the United States, being the consideration-money above mentioned, in full.

JOHN FAIRLEY.

Test: JAMES M. RIDDLE.

City of Pittsburg, ss.

Before me, an alderman of said city, personally came the above named John Fairley, and acknowledged the above indenture to be his act and deed, and desired the same might be recorded as such.

In testimony whereof, I have hereunto set my hand and seal, the 12th day of January, A. D. 1826.

THOMAS ENOCH.    [SEAL.]"

The court entered judgment for the plaintiff for $3572.12, which, on removal of the case to the Supreme Court by the defendant, was assigned for error.

*D. Reed,* for plaintiff in error, referred to Moss *v.* Sheldon, 3 W. & S. 160; 2 Washburn on Real Property 691; 1 Wood. Conv. 213; Stocking *v.* Fairchild, 5 Pick. 181; Flint *v.* Sheldon, 13 Mass. 447.

*A. H. Miller,* for defendant in error, cited 2 Washburn on Real Property 691; Tyler *v.* Moore, 6 Wright 387; 2 Bl. Com. 298; Wager *v.* Wager, 1 S. & R. 375; Moss *v.* Sheldon, 3 W. & S. 160; 2 Rep. 23; Dodwell *v.* Gibbs, 5 Barn. & Cr. 709; Brittenbach *v.* Tarr, 1 Am. Law Reg. 419.

The opinion of the court was delivered, January 7th 1868, by

AGNEW, J.—The *nota bene* in the deed from Peter Fairley to Neely and Burns intervenes between the words "Sealed and delivered in presence of," and the names "James M. Riddle and Thomas Enoch," the subscribing witnesses, occupying thus the usual place for memoranda of alterations and interlineations in a deed. It also stands before the receipt of Fairley for the purchase-money, witnessed by James M. Riddle, and before the acknowledgment taken before Thomas Enoch, the other witness. And it is a memorandum against the interest of the grantee to whose custody the delivery consigned the deed. It is, therefore, not probable that it was made after the sealing and delivery. All the internal evidence of the *nota bene,* in connection with the paper, conspire to make it a part of the deed. It falls, therefore, clearly within the general principle stated by Gibson, C. J., in Simpson *v.* Stackhouse, 9 Barr 186, which presumes in favor of innocence that it is a legitimate part of the instrument, and also specially within the cases of Heffelfinger *v.* Shultz, 16 S. & R. 46, and Gray *v.* Foster, 10 Watts 280, which not only

carry the deed as legitimate evidence to the jury, but also justify their deduction of the legitimacy of the memorandum *ex visceribus.*

The *nota bene* being then a legitimate part of the deed done before sealing and delivery, the next question is its effect. On this point Gray *v.* Foster also determines that the grantee taking the instrument, with this memorandum upon it, is affected by its operation. Its effect then was to control the operation of the deed; not, however, as a *habendum* contradictory to the premises of the deed, as the argument seems to suppose, but by a qualification only of the use. The estate granted in the premises remains the same in the *habendum*, which neither limits nor controls the language of the premises. A trust is not contradictory to the estate, but a mere qualification of its use, and only establishes a new and consistent relation, but does not cut down the fee simple which was granted: Porter *v.* Mayfield, 9 Harris 264.

By the *nota bene* the grantee accepting the deed with this as the expressed intent of the grantor at the time of sealing and delivery, consented to take and to hold the estate to him and his heirs in fee in trust after the death of himself and wife, to the use and benefit of his daughter, Mary Ann Burns. Having accepted the estate in this condition, evidenced too by writing coeval with and a constituent part of his title, he cannot afterward deny the trust. If the case stood here the defendant would have been entitled to judgment, but the stated case also finds that Daniel Burns survived both his wife and daughter, and this daughter, Mary Ann, was their only child, and died without issue. It is clear, therefore, that the trust never took effect, or was executed in possession. Unless the trust in Mary Ann, therefore, was a fee which descended to her next of kin at her death, the legal estate remained in Daniel Burns, and the trust fell. The language of the *nota bene* contains no words of inheritance, so that the estate vested by the trust in Mary Ann is a matter of construction only. In limitations of trusts, either of real or personal estates, it is said, that the construction generally speaking is the same as in the like limitations of legal estates, though with much greater deference to the manifest intent; and further, that though equity follows the law and applies the doctrines appertaining to legal estates to trusts, yet a court of equity does not hold itself strictly bound by the technical rules of law, but takes a wider range and more liberal rule in favor of the intention of the parties. Hence, a conveyance in trust will carry a fee without words of limitation when the intent is manifest: Kent's Com., vol. 4, pp. 303–304.

Applying these principles to the deed in this case, we find it made to two sons-in-law in fee simple, in consideration of natural

[Ivory v. Burns.]

affection, and of $1 in money—that the property conveyed is to be held in severalty by a designated mode of division, and then by the *nota bene*, that the estate of each has to be enjoyed by the son-in-law and his wife, the daughter of the grantor, for their lives, and by a certain daughter of each couple respectively after their deaths. Clearly here is evidence of an intended settlement of the grantor's property in each family respectively, without the slighest evidence of an intention that the estate should revert to himself on any contingency, or that it should go over from one family into the other. With this manifest intent on part of the grantor, it would ill become a chancellor to supply words of inheritance to the trust for Mary Ann Burns, dying before her father, and thereby to withdraw the fee simple granted to her father, and carry it over on her death into the other family as her next of kin and heirs at law. Clearly the intent that Daniel Burns shall have a fee simple discharged of the trust in the event of the death of his daughter, in his lifetime, is stronger than any supposed intent to carry away from him a grant which was, by its express terms, sufficient to continue the estate in himself. In this view of the case, his deed is operative to continue the fee in himself, and the trust for his daughter fell at her death, leaving him seised in demesne as of fee of an indefeasible estate.

The plaintiff was therefore entitled to judgment, and the judgment is affirmed.