## Loesch's Estate.

Argued March 24, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Clinton D. Higby,* with him *Charles P. Hewes,* for appellant.

*Stephen E. Jones,* with him *J. Reed Craig* and *C. Arthur Blass,* of *Craig, Blass & Jones,* for appellees.

OPINION BY MR. JUSTICE MAXEY, May 25, 1936:

In 1920, Eugen Loesch and Anna M. Reddinger, contemplating marriage with each other, entered into a written agreement, by the terms of which they agreed to retain their separate estates and to relinquish all the legal rights which the marriage would otherwise create in their respective properties. It was provided, however, that the future Mrs. Loesch should receive the sum of $15,000 "in full of her share" in the estate of her proposed husband. No provision with respect to the time of payment of this sum was inserted in the contract. The parties were married shortly after the execution of the antenuptial agreement and thereafter lived together as husband and wife until Loesch's death in 1933.

The great part of decedent's wealth was invested in real estate and mortgages. During the years between 1922 and 1931, inclusive, Loesch acquired several mortgages, five of which, in existence at the time of his death, and totaling $18,000 in face value, had been taken at his

direction in the joint names of decedent and his wife. These mortgages had been purchased by him with his own funds. During his lifetime he had collected all payments thereon. In the meantime, in 1926, decedent made his last will and testament, in which, after directing the payment to his widow of $15,000, "as stipulated and agreed upon by our antenuptial agreement," he gave all the rest, residue and remainder of his estate to his two sons and a daughter by a former marriage. Four of the mortgages had been acquired prior to the execution of the will, the first expressly providing for the "right of survivorship to the entirety in the survivor." His sons were appointed executors.

Upon the theory that she was entitled to $15,000 from the estate, over and above the value of the mortgages, the widow filed her petition in the court below to compel payment. Her claim was resisted upon the ground that the mortgages discharged decedent's obligation under the contract. The court, after discussing principles relating to advancements and resulting trusts, concluded that it was the decedent's intention that the above referred to mortgages be taken in discharge of the obligation or as security for the payment thereof. Accordingly, it entered a decree under which the petitioner was given the option of assigning the mortgages to the estate, in which event she should receive payment of $15,000, or of retaining them, providing, however, for the payment to her of the difference if their value was found to be less than $15,000, and for the payment of the excess by her to the estate in case their value exceeded $15,000. From the decree so entered the widow has appealed.

We think the appeal is well taken. Whenever property is held jointly by husband and wife a tenancy by the entireties exists and the survivor will take a complete title. When decedent took the assignments of the various mortgages in the joint names of himself and his wife he must have known that in the event of his prior decease she would become the absolute owner of the bonds and

their accompanying security. As a matter of fact, the first mortgage expressly so provided, and although no such expression is contained in the succeeding assignments, the surviving spouse became their absolute owner and it is to be presumed that Loesch understood that this would be the legal effect of the taking in both names. There is no evidence that decedent did not contemplate the legal incidents that followed from the manner in which title to the mortgages was taken. It is of no moment that his own funds purchased the securities and that he received the income therefrom during his lifetime: see *Henderson v. Hughes,* 320 Pa. 124, 182 A. 392. The law would ordinarily treat the transactions as gifts, and there is nothing in the case that interferes with the application of the general rule. In any event, the burden of proof was upon those who would have them construed not as gifts but as payments of obligations. That burden they failed to meet.

The natural relationship that exists between husband and wife supports the theory that whatever rights the husband gave his wife in these mortgages were gifts. If the husband had intended to discharge his antenuptial obligation by means of giving his wife survivorship rights in these mortgages, it is fair to assume that he would have said so. Apparently it was his desire to confer additional benefits on the woman who had become his wife. That he intended these mortgages as gifts is, we think, clearly revealed. Four of the mortgages, totaling $13,000, had already been purchased at the time of the execution of the will. He nevertheless directed "that the sum of fifteen thousand ($15,000) dollars be paid to [his] wife Anna M. Loesch as stipulated and agreed upon by our antenuptial agreement . . . out of my estate, by my Executors hereinafter named." The mortgages in question were *not* a part of his estate and therefore it is a legitimate inference from the testamentary provision quoted that testator never contemplated that the $15,000 provided for in the antenuptial agreement

should be paid out of any fund constituted in part of the proceeds of the mortgages.

To contend that these transactions were for the purpose of securing the payment stipulated in the contract is to impute to the testator a thought that has no evidentiary support. The doctrine of advancements does not apply as between husband and wife: *Greiner's App.,* 103 Pa. 89. Moreover, the application of the doctrine is restricted to cases of intestacy. Rights in the mortgages were the subject-matter of effective gifts inter vivos, and since decedent had these mortgages taken in the name of himself and wife, she, as the surviving spouse, did not hold them impressed with a trust.

It is unnecessary to consider the other questions that have been argued.

The decree of the court below is reversed and the record is remitted for further proceedings not inconsistent with this opinion; costs to be paid out of the estate.